Good morning. May it please the Court, my name is Carlos Singer, with me is Edith Ramirez, and we are here representing Edgar Hernandez-Gil, who was present in the courtroom with his family. With the Court's permission, I would like to reserve three minutes of my time for rebuttal. This appeal involves the potential deportation of Petitioner Edgar Hernandez-Gil, the father of three young children, all of whom are U.S. citizens. And I should take this opportunity to advise the Court that, although the record and briefing indicate that Petitioner had two U.S. citizen children, he recently had a third child, who is still an infant, who was also born in the United States. So the record should now reflect that he's got three children. That deportation would either force Petitioner to remove his three children from the only country they've ever known, or leave them here without a father. Because this case involves such potentially tragic and serious considerations, Petitioner was entitled to a fair and full hearing represented by effective counsel. However, in at least two distinct ways, the system failed him here. Petitioner retained counsel and attended every hearing. However, when it came time for his merits hearing, he appeared while his attorney did not. His attorney's failure to appear at this most important hearing in an immigration proceeding constituted the ineffective assistance of counsel. This was wrong number one. Upon realizing that counsel was absent, the I.J. first concluded that she would proceed with the hearing without Petitioner's counsel present. Perhaps realizing the error of that conclusion, the I.J. backtracked and then proceeded to ask Petitioner a few questions. She asked whether Petitioner was prepared to present his case. He responded, no. She asked whether Petitioner wanted a continuance to meet with counsel to help prepare his case. He responded, yes. Notwithstanding those responses, the I.J. proceeded to conduct the hearing without Petitioner's attorney ultimately denying his application. The I.J.'s refusal to grant a continuance in this case so that Petitioner could meet with counsel or engage new counsel deprived him of a full and fair hearing and was in violation of his constitutional and statutory right to counsel. This was wrong number two. This appeal seeks a redress of both of these wrongs, and with the Court's permission, I'd like to address the second wrong first. With regard to the deprivation of the right to counsel, contrary to the Attorney General's position, a Fifth Amendment right to counsel does indeed exist for subjects of immigration proceedings. The Supreme Court and this Court has held that due process mandates that an alien is entitled to counsel of his own choice at his own expense. In addition, aliens enjoy a statutory right to counsel under 8 U.S.C. 1362. And when, as here, an individual is deprived of his statutory or constitutional right to counsel and the absence of counsel prejudices his claim for relief, he is entitled to a new hearing. Here there was no question that Petitioner's — Counsel, I have a question. Yes, Your Honor. On the issue of ineffective assistance of counsel, your client has a potential barrier of the matter of Lozado requirements. And so if you're going to argue ineffective assistance of counsel, I'd appreciate it if you would address that. Absolutely, Your Honor. With regard to the Attorney General's argument that Petitioner failed to exhaust his administrative remedies, whether it be Lozado or otherwise, we believe that Petitioner did indeed exhaust those remedies. This Court has held that when, as here, a petitioner refers to an issue or a claim in his brief to the BIA, the claim has been exhausted. In at least two filings with the BIA, Petitioner expressed that he was entitled to a new hearing represented by counsel because his attorney abandoned him. And those filings for the Court's information were the application of — application for a time extension to file his brief to the BIA, as well as the brief itself. This rule holds even when Petitioner doesn't use the precise legal language involved, such as ineffective assistance of counsel or deprivation of due process, et cetera. And particularly in this case, when Petitioner pursued this appeal pro se, he is therefore entitled to a liberal reading of his filings. With regard specifically to — I thought we had precedent that the matter of Lozado requirements apply to pro se litigants and that they have to follow them in general. There are some exceptions. Right. I think — They have to make a bar complaint. They have to give notice to the attorney. The attorney has an opportunity to give their side of the picture. There are a lot of good reasons for the matter of Lozado requirements. So I would not view it as a light matter that, you know, we could dance past unless there's a pretty well-established exception. Yes, Your Honor. I agree — I would agree with Your Honor that it's not — that it wouldn't be lightly that we would address this question. With regard specifically to Lozado, you mentioned that there were — there are exceptions to the rule that generally this Court and the BIA require that petitioners alleging ineffective assistance proceed along with these Lozado procedures. However, this Court in numerous instances has not hesitated to address IAC claims, even when petitioners have not complied with the Lozado procedures when the claims are plain in the record. And, Your Honor, we would submit that here they are. The IJ was well aware that he was represented by counsel. She stated as much on the record. She also had the EOIR-28 form that proved that petitioner was represented by counsel. And yet the attorney failed to show up at the merits hearing, the most important hearing by far of an immigration proceeding. So we would submit that the record makes plain that he received IAC. And in that sense, because this Court has held that the Lozado procedures, while important, are not sacrosanct, that — that they would address such claims even when petitioners have not complied with Lozado. Sotomayor was there a waiver of counsel at the hearing? There was not, Your Honor. He was specifically asked whether he wished to have a continuance to meet with counsel. And under the circumstances, it would have been understandable, assuming a complete lack of confidence on the part of petitioner in his — in his counsel, that he might have been able to engage new counsel at that point, but he was deprived of the opportunity to do so, notwithstanding that it would have been a modest imposition to require the IJ, particularly when such weighty considerations were involved. Could you spend some of your argument time covering why you contend there's a violation of the statutory right to counsel, and also why you contend there's a due process violation? Certainly, Your Honor. Well, we contend that this was a denial of both — of the statutory right to counsel, because he — he clearly was — had retained counsel. The IJ was well aware of that. And notwithstanding that knowledge, and notwithstanding his clear — petitioner's clear request that he be granted a continuance to meet with or engage new counsel, she proceeded to conduct the hearing outside the presence of his counsel. The facts of this case are relatively similar to those in the case of Castro-Nuno. The side is 577 F. 2nd. 577. And unfortunately, this case did not make its way into my papers, and for that, I apologize. But in any event, in that case, this Court held that an IJ's failure to continue a hearing when petitioner appeared without counsel violated the petitioner's right under 1362. That case in particular places the burden squarely on the IJ to ensure a fair hearing. The Court held that in the absence of waiver, and there was no waiver in this case, the IJ should, quote, should have acted sua sponte to continue the hearing and give the petitioner, in that case, a chance to locate counsel. Without a continuance to bring his counsel into the hearing this Court went on, the IJ effectively denied his statutory right to representation. We would submit, Your Honor, that this case is quite similar to those facts in Castro-Nuno. Kennedy. What was the name? It was Castro? Shaheen. Nuno. I'm actually assuming that there's a Castro-Nuno, N-U-N-O, as it's spelled in the record. Kennedy. We'll give you a gumshake. You can fill it out. Absolutely. All right. And... Okay. You want to reserve? You've got 49 seconds. Oh, yes. Absolutely. I'd like to reserve the remainder of my time. Thank you, Your Honor. All right. Good morning, Your Honor. Good morning, Your Honors. May it please the Court. My name is Long Park on behalf of the Attorney General, Roberto Gonzalez. In this case, Petitioners challenged the immigration judge's denial of his motion for a continuance. However, the IJ, the immigration judge did not err in this case by denying that motion, because according to the pertinent regulations, an immigration judge may grant a motion for a continuance for good cause shown. Because in this case, the immigration judge, the good cause on which the immigration judge relied was that the immigration judge determined that there would not be a sufficient benefit to warrant delaying the case based on Petitioner's testimony that he had not consulted with his attorney in preparation for that hearing scheduled for that day, nor during the 16 months prior, the immigration judge did not abuse his discretion in relying on that as the good cause reason to continue with the case and deny the motion. Let's explore that. Let me explore that, if I may, with you for a moment. First of all, if I understand the record correctly, the delay in the scheduling of the hearing wasn't really the appellant's. It wasn't of his making or the petitioner's making. It was just the scheduling that the IJ did. He scheduled the hearing a long time after their earlier conference. Now they get to the date of the hearing, and the lawyer doesn't show up. Why does the lack of consultation with the attorney before the hearing resolve the matter of whether he needed an attorney? It seems like even this is speculative, and I don't know why we would get into it. Maybe they were fully consulted before that period. Maybe the lawyer knew exactly what he was supposed to propose. If, in fact, the record shows that a different lawyer from his counsel's office said that he's here in the building somewhere in a different courtroom, why on earth shouldn't the IJ take steps to try to get the lawyer in the room and find out why he's not there and give a short continuance on a matter that affects whether the petitioner gets to stay in the country or not? Several responses to that question. First, with respect to the fact that Petitioner had not consulted his attorney during the time between his master calendar hearing and his hearing on the merits, the issue isn't so much that he failed to consult his attorney or didn't speak with her or whatever the case may be. I think the more important issue is that the immigration judge had heard from the Petitioner in this case that he had not, because he had not consulted his attorney with respect to the preparations for that particular day's hearing, that based on that claim, the immigration judge made the determination that having waiting, further delaying the case in order to have the counsel present would be not of sufficient benefit, because by Petitioner's own words, there was no consultation or preparation that she had, that they had together prepared for that particular hearing. So I think based on that, the immigration judge first made the determination, well, does this merit more, is this an unwarranted delay, and he made the call, yes, it seems like there's not a sufficient reason to delay this case, because of that. Well, that amounts to saying, gee, I don't think the attorney is going to be able to put on much of a case. But in the criminal context, and I understand this isn't criminal, in the criminal context, ordinarily a defendant has to show prejudice, but one area where a defendant does not have to show prejudice because it's deemed to be a structural error is a denial of counsel. Because it's just taken as a given that an individual pro se isn't going to be in a position to defend himself in the same way that somebody with counsel, no matter how ill-prepared the lawyer may be. Well, this isn't that context, but I'm still kind of struck by the — by a situation where there's no possibility that the Petitioner's making this up because some other lawyer came in, plainly the lawyer knew that she was supposed to be there that day, and sent somebody else in a poor way to resolve the schedule conflict to say she's in another courtroom. And for the judge to make an independent decision based on a very brief dialogue, well, they're not going to be able to put up much of a case, so I'm going to skip this right to counsel and go forward. It isn't simply a denial of a continuance. It's denial of counsel. He's got counsel. The I.J. knows he's got counsel. I.J. proceeds without counsel. Isn't that a violation of the statute? Well, first of all, I think that question goes a little bit back to the Lozada issue that Judge Gold had in there. I'm not talking about ineffective assistance of counsel. I'm drawing a clear distinction between that. That's right. There is a distinction between ineffective assistance of counsel and a distinction between deprivation of the statutory right to counsel. One of the problems in this case, however, is that there's never been any sort of proffer or declaration that has been offered by Ms. Herrera, who was the former counsel for Petitioner, simply because none of the Lozada steps have ever been met. And so there's no – Why would there need – why would we need a proffer from her? The I.J. knows independently that she's been retained to appear because McGuire comes in and tells the I.J. And the I.J. doesn't dispute that. This isn't a case where a Petitioner comes in, or responded in that case, or the alien comes in and just is kind of making things up, and I talked to a lawyer and I thought he'd be here and he's not. I.J. knows for a fact that a member of the bar has come in and told the I.J., I'm McGuire, and presumably the I.J. knows McGuire, knows McGuire and Herrera are associated. Herrera is supposed to be here. Herrera is in another courtroom. So there's no factual question whatsoever about the fact that this Petitioner has counsel who's supposed to be there. That's correct. And what's important to keep in mind, though, is this case is arising out of a civil context as opposed to a criminal context. And so, therefore, there is this requirement. And the I.J.'s presumably know that this is the way things operate in that court. They know that lawyers run from one courtroom to another and they show up. We read about it all the time. They don't even consult with their clients. I don't know what they talk about for a few minutes, and they put on their cases. And that may or will be what occurs during other cases in immigration court. But the facts of this case indicate that even if Mr. — even if the Petitioner's counsel had not been present, the facts of this case, the record of evidence does not demonstrate that the Petitioner was prejudiced in this matter. That's exactly why I brought up the criminal analogy, because that's — although ordinarily demonstration of prejudice is required, we don't go there with regard to denial of counsel because it's understood in the criminal context that appearance with counsel makes things entirely different. I think it's speculation on the part of the I.J. with regard to how much preparation had been accomplished. And I'm not sure the I.J.'s allowed to inquire into the communications between the alien and his attorney. But in any event, why should we be considering prejudice if it's taken as a given in this other context that it's a structural error that you don't have to consider prejudice? Well, I think, though, in this case, the case is arising out of the due process violation claim that because the immigration judge did not grant this continuance, Petitioner was prevented from having a full and fair hearing before the immigration judge. And this Court has clearly determined and established that where you are alleging a due process violation and you're alleging it's because you didn't get a full and fair hearing before the immigration judge, then you have to demonstrate that you've still been prejudiced as a result of that. And in this case, when you take a look at the evidence of record, the immigration judge was meticulous in asking every question that would be relevant to the cancellation context for this particular Petitioner. He asked numerous times, what kind of hardships would your children suffer? Do your children have any sort of health issues, any sort of mental, emotional, educational needs? What is the status of your family members for yourself in the U.S. and Mexico for your wife? What kinds of employment? Do you think that you'd be eligible to do? What kind of educational opportunities are there? And in addition to all of this sort of testimony that Petitioner was able to offer directly to the immigration judge, in addition to that, the evidence of record also includes a lot of documentary evidence in support of the cancellation obligation. There's, in fact, a psychologist's report, I believe, of the evaluation that was performed on the older child, which DHS counsel objected to having in the record, but the immigration judge went ahead and admitted it and said, no, I'll consider this anyway. Kennedy. But how about wasn't the immigration judge required to get a waiver of counsel? Isn't that required in the statute? Well, I think it isn't. Isn't it? I think in this case, the immigration judge. Isn't it normally required that they get a waiver? I believe this Court has generally in that context has asked that the immigration judge get a knowing and voluntary waiver for pro se aliens. Yes, Your Honor. It wasn't done here. But in this case, I think the immigration judge. It didn't make any difference, huh? But I think in this case, because the immigration judge was so meticulous in pursuing the cancellation obligation filed by the Petitioner, and because there's no prejudice that can be demonstrated as a result of. We don't know. I mean, this Petitioner, I get it, doesn't speak English. Had an attorney there that was going to go in with him. And we don't know what the prior preparation was. This is not an uncommon process down there. And so what you're saying was that the immigration judge was a great lawyer and asked all the pertinent questions, and that was it. So maybe we don't need lawyers in these cases. Well, for my sake, I certainly hope not. But to get back to this case, I believe this Court has found that where a Petitioner has been sexually deprived of counsel, if it's clear from the record that there's been some kind of harm that's been given to this Petitioner. So in previous cases, this Court has found that if a Petitioner was outright denied all forms of appeal or they were unable to file some sort of application for which they would have normally been eligible, in those kind of egregious situations, this Court has recognized, yes, there's been harm as a result of the deprivation of counsel. But in this case, the Petitioner simply can't establish that. And in fact, still, aside from speculating as to, well, his wife may get LPR status at some point, there are some things that he points to, but certainly not enough to demonstrate that this Petitioner was unable to present his full case, that he was absent from testifying, or was simply lost as to the confusion of the complexity of the process. In fact, he filed a very eloquent and legally substantial pro se brief before the Immigration Judge – I'm sorry, before the Board appealing to Immigration Judges' decisions. So you mentioned, is there authority from our Court that requires a demonstration of some articulated level of prejudice? I believe, and I will spell this. And you may well have cited, I know there are a lot of citations with regard to some of the particulars of his case and his facts and whether that qualified and so forth, but I hadn't picked up on if there is such authority, a precedent from our Court that says continuing under these circumstances will require a demonstration on the part of Petitioner of actual prejudice from the denial of counsel. I'm not sure that this Court has yet definitively made that determination. It would make a difference. I mean, if we'd said that or if the Supreme Court had said that, then end of the game for us. And I thought I heard you say something to that effect, which is why I stopped you, because if there is such authority, we ought to know about it. If there isn't, well, then I've got the same problems I've already articulated and you don't have to respond to, but it's a concern. And I understand this – my understanding is that this Court has not specifically come out with a holding saying, if you have a statutory – at least not in a published decision. But there are certainly published decisions that seemingly imply that that's what this Court believes, that it's not simply sufficient to say I was deprived of counsel, but that as a result of that deprivation there was some sort of harm or prejudice that was experienced by the Petitioner. And again, I would like to make the distinction between cases that arise out of the criminal context from those that arise in the civil context. I mean, the Constitution itself makes that distinction. And because of the importance of what goes on in terms of needing counsel, per se, in a criminal case, there is this Sixth Amendment guarantee of counsel provided for criminal defendants, as opposed to a civil immigration context in which it's simply a right for the Petitioner – for the alien to obtain counsel of their own choosing at no expense to the government. But if the alien shows up without counsel, then – and doesn't the immigration judge have to take a waiver? If – that's correct. It's true. Yes. Listen, you know, you're 4 minutes and 10 – 11 seconds over. We've helped you there. That's okay. We love the Justice Department. We give you all the time. If there are any other questions from the panel, I would just like to emphasize as closing that because this is a case in which the immigration judge meticulously developed the record in order to assist the Petitioner in pursuing the belief for which he is applying, and because there's no harm or prejudice that's been demonstrated, that you deny the petition for review. Thank you, Your Honors. Thank you. All right. Counsel? I have 47 seconds. I'm not sure I can do this, so I request maybe 3 minutes. Thank you, Your Honor. I just have three brief points, picking up from where Judge Clifton was discussing  the Petitioner's claim that it's a structural error, et cetera, we strongly would urge You like that analogy, don't you? Oh, absolutely, Your Honor. Okay. I'm not going to argue with you there. Imagine my surprise. Well, we strongly agree that it's essentially the same thing. Yes, we realize that there's a distinction between criminal and civil cases, but here it's perhaps a little bit more similar to criminal cases in the sense that in civil deportation proceedings, a similar sort of jeopardy attaches once you're subject to them. And the Supreme Court in Bridges v. Wixson discussed the importance of upholding the principles of due process in such circumstances. So we would agree that, strongly agree, that the complete deprivation of counsel is, per se, prejudicial. However, to the extent that this Court would refrain from making that holding and being inclined in that direction, we believe that in this case there was certainly prejudice. The burden of showing prejudice in this Court is whether the outcome may have been effective. We don't have to petitioner and do not show that it definitely would have changed the outcome. And here there's no question that counsel could have better marshaled the evidence, could have presented more effectively evidence regarding petitioner's limited employment prospects, the educational and psychological tolls that removal would inflict upon his children. And with regard to switching over to ineffective assistance, it's – there's no telling what other sorts of things might have been elicited had the record been developed more fully and had more facts been adduced at trial or at the merits hearing. In this case, with regard to the complete deprivation of counsel, it was the role of the I.J. to intervene to correct the injustice of having a hearing without counsel. This Court has held in less egregious circumstances, such as J. Lynn v. Ashcroft, which is cited in our papers, that in that case there was an attorney who attended a hearing by a scratchy phone connection from New York, and in that case it was essentially held – it was held that essentially the attorney failed to show up at the hearing. In this case, there's no question that the attorney completely failed to show up at the hearing. And for that reason, we would also submit that there was indeed prejudice in this case to the extent that the Court feels that it's necessary to show. With regard to the points about the client have Petitioner not contacting counsel for a year, as the Court pointed out earlier, the hearing was scheduled by the I.J. It wasn't as though Petitioner requested all that time. And we'd point out again that it was incumbent upon the I.J., particularly in circumstances such as these, when there are language barriers and other elements in play. It was incumbent upon the I.J. to ensure the basic fairness of this hearing. Moreover, again, switching to IAC, the government cites no law that shifts the burden of effective representation from counsel to the client. In this case, if an attorney doesn't contact an unsophisticated client prior to a hearing, that client is not likely to know one way or the other whether that's troubling or not. A client is entitled, as Petitioner was in this case, to rely on a basic level of competence. And moving on to my third and final point, there were comments that suggested that in this case the hearing was fair because the I.J. pointed a few things out and asked a few questions and allowed certain pieces of evidence in over the government's objection. We would submit that the hearing was inherently unfair because he wasn't represented by his attorney, his retained attorney. It doesn't matter in our view that the I.J. asked a few questions and pointed a few things out. The I.J. is the arbiter of this proceeding and can't serve simultaneously as the arbiter and a zealous advocate for Petitioner. There's no contractual or professional obligation for the I.J. to do so, although we would submit that there is this due process and statutory obligation to ensure a basic, basically fair hearing. There's no obligation further to be a zealous advocate. And for those reasons, unless the Court has any other questions, we would submit and request that this Court vacate the BIA's decision and remand with instructions for a new hearing before an I.J. Thank you. Thank you. The case was well argued on both sides, and we appreciate the arguments. And I'll say, I can't think of a day of immigration hearings that have been as well argued as what we've had this morning. Let your colleague at the Justice Department know and thank all of you. It's been very well presented. And we welcome the Justice Department lawyers to sunny Pasadena. And I hope you can stay here a few days and visit the Huntington Library and learn more about our historical courthouse. Have a good weekend. And the Court will adjourn.
judges: Pregerson, Gould, Clifton